# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# LYNCHBURG DIVISION

| | | |
|---|---|---|
| ANNETTE L. PARKER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 6:12-cv-00029 |
| | ) | |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | By: Hon. Robert S. Ballou |
| SECURITY, | ) | United States Magistrate Judge |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Annette Lamore Parker ("Parker") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for supplemental security income ("SSI") under the Social Security Act ("Act") 42 U.S.C. §§ 1381-1383f. Specifically, Parker alleges the Commissioner (1) erred in failing to find her depression to be a severe impairment, (2) erred in assigning limited weight to the opinion of her treating healthcare provider, and (3) provided a defective hypothetical to the vocational expert testifying at Parker's administrative hearing.

This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The case is ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, the argument of counsel, and the applicable law. I conclude that substantial evidence supports the Commissioner's decision and that Parker's assignments of error are without merit. Accordingly, I **RECOMMEND DENYING** Parker's Motion for Summary Judgment (Dkt. No. 11), and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 14).

1

## I.

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that the claimant failed to demonstrate that she was disabled under the Act. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The plaintiff bears the burden of proving that she suffers under a "disability" as that term is interpreted under the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent engaging in any and all forms of substantial gainful employment given the claimant's age, education, and work experience. See 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the

claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment;[1] (4) can return to his past relevant work; and if not, (5) whether she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

In cases such as this, where the claimant has submitted additional evidence to the Appeals Council, and the Appeals Council considered that evidence, this court must review the record as a whole, including the new evidence, to determine whether substantial evidence supports the Commissioner's findings. Wilkins v. Secretary, Dept. of Health and Human Servs., 953 F.2d 95-96 (4th Cir. 1991).

## II.
**Social and Vocational History**

Parker was born June 15, 1968. R. 44. She graduated from high school and was not enrolled in special education classes. She has not had any additional education or training beyond a computer class in 1986 which she did not complete. R 43-44. Parker last worked in 1999 as a file clerk. R. 48. Such work is classified as semi-skilled and light. R. 63. She also

---

[1] A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

3

has some employment history as a part-time telemarketer, which is semi-skilled and sedentary work, and as a cleaner, which is unskilled and light work, but this work never rose to the level of substantial gainful activity. R. 62.

In June 16, 2010, Parker gave described her daily activities during the school year as waking at 6:00 a.m.; making her son cereal at 7:30 a.m.; walking a block up the street to the bus stop at 8:30 a.m.; pulling out meat (presumably from the freezer) for dinner at 8:45 a.m.; watching television from 9 a.m. to 3 p.m.; taking a nap from 2:00 p.m. to 3:00 p.m. if she was able; going to doctor appointments, if any; helping her children with homework upon their arrival home from school at 3:45 p.m.; washing dishes at 6:00 p.m.; cooking dinner at 7:00 p.m.; watching TV at 8:30 p.m.; bathing; and going to sleep at 1:00-2:00 p.m.. She described her activities when school was out of session as waking up at 6:00 p.m., having "nothing besides doctor's appointment" until washing dishes at 6:00 p.m., watching television, taking "cat naps," cooking dinner at 8:00 p.m., watching television, bathing, and going to sleep at 1:00-2:00 a.m. R. 186. Parker similarly described her activities in October, 2010, stating that in the morning she showers, irons her son's clothes, gets him breakfast, makes sure he is dressed, walks him to the bus stop, watches television until "appointment time," fixes her son a snack, helps him with homework, heats up dinner, makes sure her son gets a bath, watches television, and tires to sleep, as well as sometimes getting on the computer. R. 226.

**<u>Claim History</u>**

Parker filed her claim for SSI on June 9, 2010, claiming a disability onset date of February 1, 2010. R. 166. The Commissioner denied Parker's application initially and upon reconsideration. R. 110, 116. Administrative Law Judge ("ALJ") Brian B. Rippel held a hearing

on August 4, 2011, at which Parker, represented by counsel, and a vocational expert testified. R. 38-70.

The ALJ denied Parker's claim on August 25, 2011. R. 21-32. In his opinion, the ALJ found that Parker suffered from the severe impairments of bilateral hip impairments, avascular necrosis, osteoarthritis, lumbar degenerative disc disease, obstructive sleep apnea, and obesity. R. 23. The ALJ found that Parker's asthma, voice disorder (hypertonic voice), gastroesophageal reflux disease (GERD), substance abuse disorder, and affective disorder (major depressive disorder) were non-severe impairments. R. 23-25. The ALJ found that none of these impairments, either individually or in combination, met or medically equal a listed impairment. R. 25. The ALJ further found that Parker has an RFC to perform less than the full range of sedentary work as defined in 20 CFR 416.967(a). The ALJ limited Parker to occasionally operating foot controls bilaterally, occasionally pushing and pulling with her lower extremities bilaterally, occasionally climbing ramps and stairs, and occasionally balancing, stooping, kneeling, and crouching. The ALJ prohibited Parker from climbing ladders, ropes and scaffolds, as well as from crawling, and required Parker to avoid concentrated exposure to dust, fumes, gases, hazardous machinery, and unprotected heights. R. 26. Based on this RFC, the vocational expert testified that Parker could perform work as a telephone solicitor, receptionist, or appointment clerk. R. 66-67.

Parker filed an appeal with the Social Security Administration's Appeals Council ("AC") and included one additional exhibit in her request of review. On May 24, 2012 the AC denied Parker's request for a review of the ALJ's decision, thereby rendering the decision of the ALJ the final decision of the Commissioner. R. 1-4. On June 20, 2012, Parker filed her complaint in this court seeking judicial review of the ALJ's decision (Dkt. No. 1).

# III.

**Depression**

While Parker initially argued that the ALJ erred in finding her depression as a non-severe impairment, Parker's counsel has since conceded this issue. Specifically, Parker now acknowledges that Barbara Rogers, LPC, Parker's treating therapist, stated that she did "not find [Paker] to be limited in her ability to work due to her mental health diagnosis." R. 1183. As such, and there being substantial evidence to support this finding, the Court finds no error in the ALJ's conclusion that Parker's depression was a non-severe impairment.

**Treating Source Opinion**

Parker asserts that ALJ erred in giving limited weight to her treating medical provider, Juwairiyah Foxx, NP-C. Nurse Foxx provided a physical medical source statement dated July 20, 2011, and stated the following:

- Parker suffers from pain, spasms, esophageal pain/tenderness, and shortness of breath;
- Parker has chronic pain related to her hip; the pain rates a seven out of ten; the pain located in her back and hip (bilateral and lumbar); and bending, lifting, and squatting worsens the pain;
- Parker can walk one city block without rest or severe pain;
- Parker can sit for 15 minutes at one time before needing to get up; and can stand for 15 minutes at a one time before needing to sit down, walk around, etc.;
- Parker can sit for less than two hours total in an eight hour working day and can stand/walk for less than two hours total in an eight hour working day;
- Parker requires a job that permits shifting positions from sitting, standing, or walking;
- Parker needs, every 30 minutes, a 10 minutes period of walking, during an eight hour work day;
- Parker needs unscheduled break every hour for 10 minutes due to muscle weakness, pain/paresthesias, and numbness;
- With prolonged sitting, Parker needs to elevate her legs at least 90 degrees for 75% of an eight hour working day on a sedentary job due to swelling in her legs;
- Parker can rarely lift less than 10 lbs, and never left 20 lbs or 50 lbs;
- Parker can rarely twist, stoop (bend), or climb stairs, and never crouch/squat or climb ladders;
- Parker has significant limitations with reaching, handling, or fingering, can use hands—during an eight hour work day, Parker can use her hands/finger/arms 0%

6

> of the time to grasp, turn, or twist objects, 0% of the time for fine manipulation, 0% of the time to reach in front of her body, 70% of the time to reach overhead;
> - Parker would be off-task 25% or more of the time during an eight hour workday;
> - Parker can tolerate low stress work and stress increases her pain;
> - Parker would be likely to be absent from work as a result of her impairment(s) more than four days per month;
> - Parker has asthma which limits her exposure to fumes, gases, extreme changes in weather, and dust.

R. 1146-50. Because Nurse Foxx only had a limited treatment relationship with Parker and because her findings were not consistent with the medical record as a whole, I find that the ALJ did not err in assigning her opinion limited weight.

Parker initially asserted that the ALJ erred in giving limited weight the opinion of her "treating medical provider," Johnson Health Center. Pl's Br. 5. Parker's counsel has clarified that the opinion at issue is that of Nurse Foxx, and conceded that, as a nurse practitioner, Nurse Foxx is not an acceptable medical source as defined by the Act. 20 CFR §§ 404.1527(c), 416.927(c) (defining acceptable medical sources as licensed physicians, licensed or certified psychologists, and—for limited purposes—licensed optometrists, licensed podiatrists, and qualified speech-language pathologists).

Although Nurse Foxx's opinion is not from an acceptable medical source, the ALJ "has a duty to consider all of the evidence available in a claimant's case record, includ[ing] such evidence provided from 'other' nonmedical sources" such as nurse practitioners. Ingle v. Astrue, 1:10CV141, 2011 WL 5328036, at *3 (W.D.N.C. Nov. 7 2011)(citing Social Security Ruling ("SSR") 06–03p;[2] 20 CFR §§ 404.1513(d), 416.913(d)). Evidence from these non-acceptable medical sources cannot be used to establish the existence of a medically determinable impairment; nevertheless, "such sources may provide evidence, including opinion testimony,

---

[2] "Social Security Rulings are interpretations by the Social Security Administration of the Social Security Act. While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995) (citing Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989)).

regarding the severity of the claimant's impairments and [how] such impairment[s] affect the individual's ability to function." Id. (citing SSR 06–03p; 20 CFR §§°404.1513(d), 416.913(d)); see also Ledbetter v. Astrue, 8:10–CV–00195–JDA, 2011 WL 1335840, at *10 (D.S.C. April 7, 2011) ("[O]pinions from medical sources, even when not 'acceptable medical sources,' are important and should be evaluated on key issues such as impairment severity and functional effects." (citing SSR 06–03p)). To determine the weight given to the opinion of a source who is not "acceptable medical source" as defined by the Act, the ALJ must consider: (1) the length of time the source has known the claimant and the frequency of their contact; (2) the consistency of the source's opinion with the other evidence; (3) the degree to which the source provides supportive evidence; (4) how well the source explains his or her opinion; (5) whether the source has an area of specialty or expertise related to the claimant's impairments; and (6) any other factors tending to support or refute the opinion. Beck v. Astrue, 3:11-CV-00711, 2012 WL 3926018, at *12 (S.D.W. Va. Sept. 7, 2012) (citing SSR 06–03p).

Parker correctly notes that nurse practitioners play a significant role in the provision of health care in this country, particularly to low-income persons. The Court agrees that dismissing an opinion of a nurse practitioner simply because of the source would ignore both the law and the factual realities of our health care system. That, however, is not what occurred in this case. The ALJ properly analyzed the opinion, noting that Nurse Foxx had only seen Parker a few times and that her assessment of Parker was inconsistent with the objective findings in the record. R. 29. This conclusion is supported by substantial evidence.

Nurse Foxx only saw Parker twice before rendering her opinion. On March 8, 2011, Parker saw Nurse Foxx for a three month routine checkup. R. 1093-95. Parker complained of daily heartburn and continuing gastroesophageal reflux disease ("GERD") and asthma

8

symptoms. R. 1094. Parker did not complain of pain associated with her hips, back, or extremities and Nurse Foxx described Parker as well-appearing, well-developed, and in no acute distress. R. 1094. Nurse Foxx assessed Parker with GERD, asthma, and chronic pain syndrome, refilled Parker's pain medications, and instructed Parker to follow up in three months. R. 1093-94. Nurse Foxx next saw Parker on June 8, 2011, again for a three month routine checkup. R. 1067-68. Parker again complained of heartburn, but reported improvement with the use of omeprazole-bicarb and diet changes. R. 1067. Parker did not complain of pain associated with her hips, back, or extremities and Nurse Foxx again found her to be well-appearing, well-developed, and in no acute distress. R. 1067. Nurse Foxx assessed her with GERD and instructed her to follow up in three months. R. 1067. Thus, the ALJ's finding that "Foxx had only evaluated the claimant a few times," R. 29, is supported by the record.

The record likewise supports the ALJ's finding that the assessments of Nurse Foxx are not consistent with the objective medical findings contained in the treatment notes in the record. The Commissioner lays out these multiple inconsistencies in his brief. See Def.'s Br. 18-20. First, nothing in Nurse's Foxx's treatment notes support the extreme functional limitations she described in her July 20, 2011. Nurse Foxx's treatment notes are limited to two self-described routine checkups at which Parker complained of heartburn related to her GERD condition. Parker made no complaints of functional limitations imposed by her hip or back pain.

Second, although Nurse Foxx found that Parker had no ability (zero percent) to use her hands for gross manipulation, her fingers for fine manipulation, or her arms for reaching in front of her body, and a thirty percent reduction in her ability to reach overhead, R. 1149, nowhere in the extensive medical record—just shy of one thousand pages—was Parker diagnosed with any impairment that could reasonably result in such impairments in her upper extremities.

9

Furthermore, Parker's reports of her functioning expressly indicate her impairments do not affect the use of her hands. R. 191, 231.[3] Her reported activities also included numerous tasks which require the use of her hands, fingers, and arms, including washing dishes, preparing meals, ironing, washing laundry, doing crosswords puzzles, and using the computer. R. 186-88, 190, 226-27, 230.

Third, Nurse Foxx stated that Parker would need to elevate her legs to at least ninety degrees for seventy-five percent of an eight-hour workday due to swelling. R. 1149. The only medical evidence of edema was in March of 2011. Dr. Walter Beverly, MD, saw Parker on March 19 and 24, 2011 for swelling and observed general puffiness in her extremities without pitting edema, along with a rash. R. 1088-89, 1090-92. Dr. Beverly found the rash and edema to be related to dental abscesses and thought "all this swelling and rash, etc[.] will go away after [Parker receives] her dental procedure." R. 1088. He did not advise Parker to elevate her legs. There is no other evidence of edema/swelling in the extensive medical record.

Fourth, Nurse Foxx found that Parker would need unscheduled breaks due, in part, to muscle weakness. The medical record indicates that Parker had normal muscle strength throughout. R. 517, 944, 950.

Fifth, although Nurse Foxx found Parker cannot sit for even two hours in an eight hour workday and for only fifteen minutes at one time, R. 1148, Parker merely testified that if she sat too long she would have to change position by shifting in her seat. R. 54. A limitation to sedentary work would permit Parker to shift positions. "The regulations do not mandate the presumption that all sedentary jobs in the United States require the worker to sit without moving

---

[3] Parker did report having difficulties reaching in June, 2010, R. 191, but indicated no such problems when describing her activities in October, 2010. R. 231.

for six hours, trapped like a seatbelted passenger in the center seat on a transcontinental flight." Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004).

Sixth, Nurse Parker found that Parker would be "off task" 25% or more of the time during an eight hour workday. The treatment notes of Parker's treating therapist, Barbara Rogers, PLC, consistently indicate Parker demonstrated good attention. R. 1062, 1065, 1070, 1073, 1075, 1079, 1084, 1086. Parker described problems with concentration at the hearing before the ALJ, R. 57-58, but she indicated that she had no issue with her attention span in her function reports. R. 191, 231.

Finally, Nurse Foxx's opinion is contradicted by the opinions of Drs. Richard Surrusco and Joseph Duckwell, the State agency physicians, and Dr. Michael G. Milam, who Parker saw for her sleep apnea. Each of these doctors render opinions that Parker could meet—and even exceed—the demands of sedentary work. R. 92-94, 105-06, 1186-89. In contrast to Nurse Foxx's opinion, Drs. Surrusco and Duckwell found that Parker could occasionally lift and/or carry 20 lbs, frequently lift and/or carry 10 lbs, stand and/or walk about six hours in an eight hour workday, and sit about six hours in an eight hour workday. R. 92-93, 105-106. Dr. Milam found Parker can sit or stand more than two hours at one time before needing to get up, can sit or stand at least six hours total in a normal eight hour working day with normal breaks, and would only be off task 5% of the time. R. 1187-88. The ALJ was entitled to give greater weight to the opinions of these three doctors than to the opinion of Nurse Foxx. Indeed, part of the task of a fact finder is to consider and weigh the competing evidence in the record.

In sum, there is an abundance of evidence in the record to support the ALJ's decision to give Nurse Foxx's opinion limited weight. All medical opinions, whether from acceptable or non-acceptable sources, may be rejected or given less weight when they are inconsistent with the

medical evidence as a whole. In light of the record, the ALJ did not err in the weight he assigned Nurse Foxx's opinion.

**Hypothetical to the Vocational Expert**

Finally, Parker argues that the hypothetical questions posed by the ALJ to the vocational expert did not accurately reflect her condition because the ALJ neglected to include any limitations stemming her mental condition. "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record." Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005) (quoting Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989)). Having concluded that substantial evidence supports the ALJ's decision that Parker's mental impairments are non-severe—and Parker having now conceded this point—I find that the hypothetical posed to the vocational expert adequately reflected Parker's impairments as supported by the record.

## RECOMMENDED DISPOSITION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to the Honorable Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file

specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection.

      Enter: August 2, 2013

      *Robert S. Ballou*

      Robert S. Ballou
      United States Magistrate Judge